**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**WILLIAM HOWARD SILLS,**

>      **Plaintiff,**

|  |  |
|---|---|
|  | **Civil Action 2:15-cv-2908** |
| **vs.** | **Chief Judge Edmund A. Sargus, Jr.** |
|  | **Chief Magistrate Judge Elizabeth P. Deavers** |

**COMMISSIONER OF SOCIAL SECURITY,**

>      **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, William Howard Sills, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for social security disability insurance benefits and

supplemental security income.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the

Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and

the administrative record (ECF No. 8).  For the reasons that follow, it is **RECOMMENDED** that

the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's

decision.

## I.      BACKGROUND

Plaintiff filed his applications for benefits in June 2012, alleging that he has been

disabled since March 9, 2009, due to a chronic back pain, spina bifida, multiple slipped discs,

asthma, diabetes, foot problems, and sleep apnea.  (R. at 208-14, 215-23, 233.)  Plaintiff's

applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Jack Penca ("ALJ") held a video hearing on April 14, 2014, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 33-50.)  Nancy Shapiro, a vocational expert, also appeared and testified at the hearing.  (R. at 50–53.)

On April 25, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10-21.)  On August 18, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)  Plaintiff then timely commenced the instant action.

## II.   HEARING TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff testified at the administrative hearing that he was married and lived in a house with his wife and four children.  His usual weight was 320 pounds, at his height of 5'11."  (R. at 33.)  He testified that has a post high school certificate in building trades.  (R. at 33-34.)  Plaintiff testified that he last worked in 2010, delivering pizza, but quit the job due to the physical requirements of getting in and out of a vehicle and walking.  (R. at 34.)

Plaintiff testified that he had sharp pain in his spine with the worst pain in his lower back.  (R. at 37.)  He testified that the pain sometimes radiated up to his mid back and down into his legs.  (R. at 37-38.)  He described his leg pain as intermittent with unpredictable numbness.  (R. at 38-39.)  Plaintiff testified that he also had occasional shoulder pain.  He testified that took pain medications that "help[ed]" with the pain, but did not "get rid of the pain."  (R. at 38.)

2

Plaintiff's treatment has included epidural injections which, he stated, helped with his pain symptoms for about two weeks.  (R. at 36-37.)  He had also attended physical therapy but was told by his doctor that the physical therapy would cause more harm.  (R. at 40.)

Plaintiff acknowledged that bending, sitting, and standing, or "any kind of physical activity" made his pain worse.  (R. at 38.)  Plaintiff rated his pain severity at a level of 8 on a 0-10 visual analog scale.  (R. at 39.)  Medication brought his pain level down to a 5.  (R. at 39-40.)  Plaintiff acknowledged he was using a cane the day of the hearing, that he used it in his right hand, and that it had been prescribed by his doctor about a year and one-half earlier.  (R. at 40-41.)

Plaintiff estimated that he could walk about one hundred yards before he had pain and had to sit down.  He stated that he could walk without the cane, but using it was easier and less strenuous.  He estimated that he could stand or sit for twenty to thirty minutes; and he either needed to use his cane or lean against something while standing.  (R. at 41.)  Plaintiff testified that he had to use a back rest or he was "constantly uncomfortable" and always squirming while sitting.  (R. at 41-42.)  At home he sat on the couch or a recliner.  (R. at 42.)

Plaintiff believed that he could lift five or ten pounds.  He had no trouble using his hands, but his shoulders bothered him if he lifted or carried something such as a sack of groceries.  He stated that he could not reach overhead without pain and that his right shoulder was worse than his left.  (R. at 42-43.)  He testified that bending to touch his knees, kneeling, or squatting "hurts really, really bad."  (R. at 43.)

Plaintiff testified that he had a driver's license and he drove two or three times a week, noting it bothered him to drive more than twenty to thirty minutes.  (R. at 43-44.)  Plaintiff

testified that he did not sleep well at night because he was always tossing and turning and could not get comfortable.  Plaintiff believed he got four to six hours of sleep a night.  (R. at 44.)

As to his daily activities, he spent an average day sitting on the couch watching television or reading a book.  He did very little housework, maybe drying dishes or folding laundry on a table.  He stated his wife did the majority of the housework and cooking.  He could not carry the clothes hamper to take clothes to the washer or to put them away.  (R. at 45.)  He went grocery shopping with his wife, but he was in an electric cart while his wife pushed a regular cart.  He had been using the electric cart for about two years prior to the hearing.  Plaintiff testified he could not go to his children's school events because there were too many stairs to climb.  (R. at 46.)  He did not socialize or go to church or clubs.  He liked to read historical books, but he had trouble concentrating due to his pain.  He could sit and read for only about half an hour.  (R. at 47.)

Plaintiff next testified to his depression.  He took medication that had helped with his symptoms.  (R. at 47-48.)  He testified that it bothers him watching his wife do everything and watching his children go on with their lives and not being able to do things with them.  He speaks with his family on the phone and connects with them though the computer.  (R. at 48.)  He used to fish and go to the movies, but no longer did those things.  (R. at 49.)

**B.      Vocational Expert Testimony**

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past jobs include a maintenance worker and a floor installer.  (R. at 51.)

The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC") to the VE.  (R. at 51-52.)  Based on Plaintiff's age, education, and work experience and

the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could not perform his past relevant work, but could perform approximately 7,800 unskilled jobs in the regional economy such as a hand packer, assembler, or price marker.  (R. at 52.)

The VE further testified that if Plaintiff required the use of a cane, i.e. he could not stand without the cane at all times, there would be no sedentary level or light level jobs that he could perform.  (R. at 52-53.)

The VE further testified that if Plaintiff would be off task due to symptoms as much as fifteen percent of every day, he would not be able to do the jobs cited. She further testified that if Plaintiff could only stand and walk two hours per day and sit two hours per day, he could not perform full-time competitive employment.  (R. at 53.)

### III.    MEDICAL RECORDS

#### A.    Michael Sayegh, M.D.

Plaintiff initially consulted with pain management specialist, Dr. Sayegh on October 23, 2008.  He was referred by his primary care physician due to low back pain secondary to childhood spina bifida.  Plaintiff complained of constant throbbing and burning pain that radiated to his leg.  On examination, Plaintiff was alert, oriented, mildly anxious.  His low back showed trigger points bilateral in a paraspinal muscles.  He also exhibited mildly decreased sensation in lateral aspect of both lower legs.  (R. at 479.)  Dr. Sayegh diagnosed Plaintiff with lumbago, sciatica, degenerative disc disease, foraminal stenosis, spondylolisthesis, lumbar facet syndrome, spina bifida, thoracic pain, radiculopathy, and herniated nucleus pulposus.  A lumbar block injection was administered.  (*Id.*)

5

When seen the following month, Plaintiff reported minimal relief from the injection.  (R. at 477.)

In July 2009, Plaintiff reported his pain was worse since the last visit.  On examination, Plaintiff exhibited mid and lower back trigger points and tenderness bilaterally in the paraspinal muscles.  Neurological examination of the lower extremities showed mild deceased sensation in the lateral aspect of both lower legs.  Both legs raising tests were mildly positive. Dr. Sayegh renewed Plaintiff's medications: Percocet, Naproxen, Valium, and Lortab.  (R. at 73.)  Plaintiff received another lumbar epidural steroid injection.  (R. at 485.)

By November 2009, Plaintiff reported the medication was helping.  Examination on his mid and lower back still showed trigger points and tenderness bilateral and in the paraspinal muscles.  Neurological examination of the lower extremities continued to show mild decreased sensation in the lateral aspect of both legs.  (R. at 471.)

Plaintiff underwent a lumbar spine MRI in December 2009, which revealed central disc herniation that impresses the thecal sac at T11-12.  Disk bulging is demonstrated at T12-L1 and L5-S1, and more prominently at L1-2, L2-3, and at L4-5, impressing the thecal sac at these levels.  There was no lumbar herniated disk.  There was no conus medullaris lesion, fracture, bony destructive lesion or paravertebral soft tissue mass.  (R. at 481.)

In August 2010, Plaintiff rated his pain severity at a level of 7 on a 0-10 visual analog scale.  He exhibited mid and lower back trigger points and tenderness bilateral and in the paraspinal muscles.  Neurological exam of lower extremities continued to show mild decreased sensation in the lateral aspect of both legs.  (R. at 464-65.)  In June 2011, Plaintiff again rated his pain severity at a level of 7 on a 0-10 visual analog scale.  Plaintiff received a lumbar epidural

steroid injection for which he reported moderate pain relief for about 2 weeks.  His back exam still revealed trigger points and tenderness in the bilateral paraspinal muscles.  (R. at 455-56.) In December 2011, Plaintiff rated his pain severity at a level of 8 on a 0-10 visual analog scale. His medication seemed to be helping improve his symptoms and lifestyle.  Examination of his mid and lower back exam still revealed trigger points and tenderness bilaterally in the paraspinal muscles.  Dr. Sayegh found that Plaintiff had "mild to moderate" decreased sensation in the lateral aspect of both lower legs.  (R. at 450.)

On July 29, 2012, Dr. Sayegh completed a questionnaire on behalf of the administration in which he identified Plaintiff's diagnoses as chronic severe back pain and depression.  He noted Plaintiff suffered from decreased sensation in his lower legs; exhibited a limited range of motion, had intact but painful fine and gross manipulation; and a painful gait.  Plaintiff did not use an ambulatory aid nor was one medically necessary.  (R. at 440-41.)

Plaintiff  continued to follow up for pain management treatment approximately every four months through at least November 2013.  (R. at 489-96.)

On March 6, 2014, Dr. Sayegh opined that Plaintiff could only lift and carry up to five pounds.  He could stand/walk up to 30 minutes without interruption and no more than 2 hours total during an 8-hour workday; he could sit up to 30 minutes without interruption and no more than 2 hours total during an 8-hour workday.  He could never climb, balance, stoop, crouch, kneel, or crawl.  He must avoid heights, temperature extremes, chemicals, fumes, humidity, and vibrations.  He could occasionally reach in all directions; he could frequently handle, finger, and feel.  (R. at 497-500.)

7

**B.      Mark Scott, D.P.M.**

On June 26, 2012, Plaintiff was examined by podiatrist Mark Scott, D.P.M. regarding symptoms of numbness and tingling in Plaintiff's feet.  (R. at 398-399.)  Dr. Scott diagnosed Plaintiff with double crush syndrome secondary to low back disease.  (*Id*.)

**C.      State Agency Evaluations**

On September 2, 2012, state agency physician, Lynne Torello, M.D., reviewed the record and assessed Plaintiff's physical functioning capacity.  (R. at 63-72.)  Dr. Torello opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in a workday; and sit for about six hours in a workday.  (R. at 70.)  According to Dr. Torello, Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crawl, or crouch; but never climb ladders, ropes, or scaffolds.  (*Id.*)  Dr. Torello also found that Plaintiff should avoid concentrated exposure to extreme cold and head; humidity, fumes, odors, gases, poor ventilation, etc. due to his asthma.  (R. at 71.)  As to Plaintiff's credibility, Dr. Torello found him partially credible, noting his conditions are stable on medications and his obesity is a contributing factor and does not impose severe restrictions.  (R. at 69.)

Gary Hinzman, M.D. reviewed Plaintiff's records upon reconsideration on November 26, 2012 and determined that Plaintiff could only stand and/or walk for 4 hours in a work day due to his chronic severe back pain; decreased sensation in his lower legs; and limited range of motion in his spine.  (R. at 95.)  Dr. Hinzman affirmed the remainder of Dr. Torello's assessment. (R. at 89-98.)

8

## IV.  THE ADMINISTRATIVE DECISION

On April 25, 2014, the ALJ issued his decision.  (R. at 10-21.)  Plaintiff met the insured status requirements through March 31, 2014.  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since March 9, 2009, the alleged onset date.  (R. at 12.)  The ALJ found that Plaintiff had the severe impairments of obesity, back pain, and asthma.  (*Id.*)  The ALJ determined that Plaintiff's left middle finger laceration, viral gastroenteritis, adjustment disorder with anxiety to newborn son, ankle sprain, diabetes mellitus, pes planovalgus deformity, hyperhidrosis, hypertension, suspected obstructive sleep apnea, high cholesterol, diarrhea, left hand pain, cellulitis, eczema, and mental impairment of anxiety were non-severe impairments.  (R. at 13.)  He further found that Plaintiff did not have an impairment or combination of impairments that met or medically

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

9

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(R. at 14.)  At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dust, gases, poor ventilation, and hazards such as unprotected heights and moving machinery.

(R. at 15.)  In reaching this determination, the ALJ accorded "significant weight" to the opinions of the state agency reviewing physicians, Drs. Torello and Gary Hinzman, "but find that the totality of this record supports slightly increased limitations . . ."  (R. at 18.)  The ALJ gave "no weight" to the assessment of Dr. Sayegh finding it "without support from the evidence of record, including Dr. Sayegh's own treatment notes."  (*Id.*)

Relying on the VE's testimony, the ALJ concluded that Plaintiff cannot perform his past relevant work, but he could perform jobs that exist in significant numbers in the national economy.  (R. at 19-20.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R at 20.)

## VII.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VIII. LEGAL ANALYSIS

Plaintiff raises a single challenge to the ALJ's decision. Specifically, he contends that the ALJ committed reversible error in failing to failing to properly weigh the opinion of the treating

physician, Dr. Sayegh. (ECF No. 10, at 9-13, ECF No. 17, at 1-2.)  The Undersigned disagrees and concludes that substantial evidence supports the ALJ's decision.

### A.      Treating Physician's Opinion

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion

with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at \*7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

13

**B.      Application**

The ALJ did not err in according no weight to the opinion of Plaintiff's treating physician, Dr. Sayegh with respect to his analysis of Plaintiff's physical impairments. Specifically, the ALJ properly considered the *Wilson* factors in concluding that Dr. Sayegh's opinion was entitled to little weight.  378 F.3d at 544.  First, the ALJ did acknowledge that Plaintiff had a treating physician relationship with Dr. Sayegh, who treated Plaintiff from 2008 through March 2014.  (R. at 16-18.)  Second, the ALJ provided good reasons for rejecting Dr. Sayegh's opinion because it is not consistent with, or supported by, substantial medical evidence in the record, including Dr. Sayegh's own treatment notes.  Dr. Sayegh's notes reflect that Plaintiff reported relief of symptoms with medications in October 2011; up to 20 percent relief of symptoms with injections in January 2013; up to 80 percent relief of symptoms after injections in November 2013; and a physical assessment of Plaintiff in October 2012 indicated that he did not need an assistive device.  (R. at 16-18.)  An ALJ properly discounts an opinion of a treating physician that is not supported by his or her treatment notes in determining to accord no weight to the opinion.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (upholding the failure to accord a treating physician's opinion controlling weight if the physician's own diagnostic reports are unsupportive of petitioner's disability claim); 20 C.F.R. § 404.157(c)(2) and (3) (identifying "supportability" and "consistency" as relevant considerations).

In addition to Dr. Sayegh's treatment notes, the ALJ thoroughly examined the record as a whole, which again provides substantial evidence to support his determination to afford no weight to Dr. Sayegh's opinion.  Specifically, the ALJ noted that Plaintiff is able to perform activities of daily living, which is not consistent with a disability determination.  *See Kinter v.*

14

*Colvin*, No. 5:12-CV-490, 2013 WL 1878883, at *10 (N.D. Ohio Apr. 18, 2013) (upholding

ALJ's decision not to credit treating physician's RFC opinion where the plaintiff's daily living

activities were inconsistent with the treating physician's RFC assessment).  The ALJ's

determinations in this regard are well-supported by the evidence.  For example, Plaintiff has four

children at home for whom he assists in caring.  (R. at 18.)  Childcare can be "quite demanding

both physically and emotionally," the ALJ enumerated.  (*Id*.)  Moreover, the ALJ highlighted

that the record suggests Plaintiff is not working for reasons other than the allegedly disabling

impairment.  (R. at 17-18.)  This assertion is amply supported in the record.  At the hearing,

Plaintiff testified that he stopped working in both pizza delivery and floor installation because it

was too physically demanding.  (R. at 49.)  However, upon further questioning from the ALJ,

Plaintiff clarified that he actually quit working at the pizza shop because he was not given the

opportunity to work more than three hours per day, two days a week, and that the minimum

wage earned from those six hours of work per week was not worth the aggravation of driving to

work.  (R. 17-18; 49-50.)

Contradictory testimony is also a relevant consideration.  20 C.F.R. § 404.1527(c)(3).

Here, the record, including Plaintiff's testimony regarding why he is not working, is inconsistent.

Additionally, the ALJ noted, Plaintiff testified that Dr. Sayegh prescribed a cane.  But, "there is

no objective evidence in the record to support this."  (R. at 18.)  Physical assessments completed

by Dr. Sayegh did not indicate that the Plaintiff required or used a cane or any other assistive

device.  (*Id*.)

Finally, it was proper for the ALJ to give significant weight to the state agency reviewing

physician's opinions because they were consistent with the record as a whole.  Moreover, state

15

agency physicians possess particular familiarity with the social security program and are "highly qualified physicians . . . who are experts in social security disability evaluations." 20 C.F.R. § 416.927(e)(2)(i); *accord Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001).  In September 2012, Dr. Torello opined that Plaintiff was able to perform "light exertion," an opinion affirmed by Dr. Hinzman in November 2012.  (*Id*.)  The ALJ reasonably credited the state agency physician's opinions.  Plaintiff does not challenge the weight the ALJ gave to their opinions.

Plaintiff's contrary arguments on this point are not well-taken.  Plaintiff points only to Dr. Sayegh's own treatment notes as well as one additional examination by podiatrist Dr. Scott on June 26, 2012 as demonstrative of his argument that Dr. Sayegh's opinion is entitled to controlling weight.  (ECF No. 10, at 10-12.)  Plaintiff, however, does not support his contention with any specific medical evidence in the record.  While Dr. Scott did diagnose Plaintiff with double crush syndrome secondary to low back disease, there is no evidence that Plaintiff returned for other treatment related to the diagnosis.  (R. at 17.)  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal or lack of treatment is valid reason to discount severity).  Thus, the Undersigned is not persuaded that the podiatrist visit and diagnosis indicates an impairment severity that rises to the level of evidence of a disability.  In other words, Plaintiff has not pointed to any medical evidence in the record that independently supports Dr. Sayegh's opinion, other than his own treatment notes, which the ALJ determined did not support his opinion regarding Plaintiff's limitations.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (proper to reject physician's conclusion where inconsistent with substantial evidence in the record indicating otherwise).

16

Accordingly, the Undersigned concludes that the ALJ did not err in failing to accord controlling weight to the medical opinion of Dr. Sayegh.  Furthermore, substantial evidence supports the ALJ's decision to assign it no weight.

### IX.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

### X.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

17

magistrate judge's report and recommendation).  Even when timely objections are filed,

appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation

omitted)).


Date: February 17, 2017                                  _____ */s/ Elizabeth A. Preston Deavers*
                                                        ELIZABETH A. PRESTON DEAVERS
                                                        UNITED STATES MAGISTRATE JUDGE